UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-22608-ALTMAN/Reid

**GUIDO GUILLERMO MORENO**,

    *Plaintiff*,

v.

**WAL-MART STORES EAST, LP**,

    *Defendant*.

_____/

## ORDER

Wal-Mart Stores East, LP, our Defendant, asks us to enter summary judgment in its favor on the Plaintiff's single negligence count. After careful review—and taking the evidence in the light most favorable to the Plaintiff—we find that several issues of material fact remain unresolved. We'll therefore **DENY** the Defendant's Motion for Summary Judgment and proceed to trial.

### THE FACTS

On March 24, 2022, Guido Guillermo Moreno, our Plaintiff, and Luis Gabriel Torres, his husband, went to the Wal-Mart located at 9300 NW 77th Ave., Hialeah Gardens, Florida, to buy groceries.[1] *See* Joint Statement of Undisputed Facts ("JSOUF") [ECF No. 22] at ¶¶ 1–2 (first citing

---

[1] "The facts are described in the light most favorable to [the non-moving party]." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 n.2 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes *only* and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016); *see also Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)). In considering Wal-Mart's Motion, then, we describe the facts in the light most favorable to the Plaintiff and rely on Wal-Mart's Statement of Material Facts [ECF No. 21] *only* where the Plaintiff has failed to genuinely dispute a proposition Wal-Mart has asserted

Complaint [ECF No. 1-2] ¶¶ 5–7; and then citing Deposition of Guido Guillermo Moreno ("Moreno Dep.") [ECF No. 22-1] at 41:22–42:17). That store is owned by Wal-Mart Stores East, LP, our Defendant. *See* State Court Answer [ECF No. 1-4] ¶ 6 ("Defendant admits that it owned the property[.]"). After leaving his shopping bags with the cashier, *see* Moreno Dep. at 57:14–17 ("Q. . . . Were you able to put your bags into the car or did you have to leave those in the car? A. I left it with the cashier."), Moreno went to find Torres and eventually reunited with him in the back of the store, *see id.* at 58:2–3 ("We found each other in the back."); *see also* Deposition of Luis Gabriel Torres ("Torres Dep.") [ECF No. 22-2] at 10:7–11 ("Q. And the part where you met up in the store, that was pretty close by to where the incident occurred; is that correct? A. Yes. When we met, yes, we were close by the aisle.").[2] Torres "had an item in his hand" he hadn't yet paid for, Moreno Dep. at 58:2–5, so Moreno and Torres "proceeded to walk . . . towards an aisle to head to the cashier area," JSOUF ¶ 3 (citing Moreno Dep. at 62:12–13). Moreno "walked on the left side while [Torres] walked slightly in front of him on his right side." *Id.* ¶ 4 (first citing Moreno Dep. at 54:19–25; and then citing Incident Surveillance Video [ECF No. 27] at 00:04:45–00:04:58). Neither of them was pushing a cart at the time. *See* Incident Surveillance Video at 00:04:45–00:04:58; *see also* Moreno Dep. at 61:22–62:4 ("Q. Were you pushing a cart or carrying anything? . . . A. My purse, because all the items were already at the cashier up front.").

When Moreno "reached the beginning of the aisle his right foot made contact with [a] substance causing him to slip backwards and fall to the ground on his right hip." JSOUF ¶ 5 (first

---

there, *see* S.D. FLA. L.R. 56.1(b) ("All material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement provided that the Court finds that the movant's statement is supported by evidence in the record.").

[2] Both depositions were conducted in Spanish and English and were "truly and correctly translate[d] from English into Spanish and from Spanish into English" by an interpreter. Moreno Dep. at 4:8–12; Torres Dep. at 4:10–12.

citing Moreno Dep. at 54:9–13; and then citing Incident Surveillance Video at 00:04:55–00:05:05).[3] Moreno didn't see "anything on the ground" before he slipped. *Id.* ¶ 6 (citing Moreno Dep. at 58:18–24 ("I was not looking at the floor. I don't know if -- I didn't see water. Maybe I step and I didn't pay attention.")). But, "after [he] fell," Moreno saw that he had slipped on "a clear liquid," Moreno Dep. at 63:18–19, although he wasn't sure whether it was water or something else, *see id.* at 60:20–21 ("I said water, but I don't know what it was. Can be any liquid, any fluid."); *but see* Torres Dep. at 12:24–13:1 ("Q. Do you know what the substance was? A. Yes. After he fell is when I saw that it was water."). The liquid "looked dirty," Moreno Dep. at 66:14–16, and displayed "marks of steps and lines that the carts leave," *id.* at 63:19–21; *see also* Torres Dep. at 13:9–21 ("[Y]ou could see the steps on the -- the stain of the step on the water, plus . . . the mark of the tires of the cart . . . . [W]hen the fall occurred, we were able to notice that there were footprints and cart tires."). Moreno doesn't remember the liquid's exact "size [in] inches," Moreno Dep. at 63:23–24, but recalls that it was "getting longer due to the carts that passed by before," *id.* at 64:11–12. The parties agree that the "substance [Moreno] slipped on consisted of a few small puddles." JSOUF ¶ 11.

Neither Moreno nor Torres saw the liquid before the fall. *See* Moreno Dep. at 65:2–3 ("Before the incident, I couldn't see it. I couldn't have even an idea of what it could be."); Torres Dep. at 11:10–12 ("Q. Now, did you see the liquid substance on the floor before the incident? A. No."). They also don't know how the liquid got on the floor, *see* Moreno Dep. at 65:13–14 ("Q. Who caused the substance to be on the floor? A. I don't know."); Torres Dep. at 14:1–2 ("Q. Do you

---

[3] Although Moreno "testified in his deposition that his left foot made contact with the substance," JSOUF ¶ 5 n.1; *see also* Moreno Dep. at 70:5–7 ("Q. . . . [W]hich foot made contact with the substance? A. My left foot[.]"), the parties don't dispute that "the video of the incident shows Plaintiff's right foot slip out from underneath him," JSOUF ¶ 5 n.1. Still, this factual discrepancy isn't sufficient to warrant summary judgment because it has nothing to do with the elements of Moreno's claim. *Cf. Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (cleaned up) ("An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.").

3

know how the water got on the floor? A. No, I don't know."), or how long it had been there before the fall, *see* Moreno Dep. at 65:15–17 ("Q. How long prior to your incident did the substance come to be on the floor? A. I cannot tell."); Torres Dep. at 13:5–8 ("Q. . . . How long was it on the floor before the incident? A. I really don't know how long."). But, from seeing the "footprints and cart tires" in the liquid, Torres surmised that "it was there for a while" before Moreno slipped on it. Torres Dep. at 13:8–21.

As captured in the surveillance footage, "[d]uring the hour prior to the incident, Wal-Mart employees walked by the area where plaintiff fell sixty-five times." Plaintiff's Response Statement of Facts ("Pl.'s Resp. SOF") [ECF No. 28] ¶ 30 (citing Pre-Incident Surveillance Video [ECF No. 36]). And, within "five minutes [of] the incident, two Wal-Mart employees walked by the area where plaintiff fell," but "[n]either ever looked down at the floor or turned their head towards the area where the incident would occur." JSOUF ¶ 19 (citing Incident Surveillance Video at 00:00:57–00:01:37, 00:04:42–00:04:51).

After sustaining injuries to his left leg, ankle, back, and neck, *see* Moreno Dep. at 80:23–81:7 ("Q. . . . So what body parts did you injure from the incident at Wal-Mart? A. My left leg, my ankle, my lower back, and my upper back. Q. Okay. And when you say 'upper back,' are you referring to like your neck area as well? A. Yes."), Moreno sued Wal-Mart in Florida state court, alleging one count of negligence, *see* Compl. ¶¶ 6–12. Wal-Mart then timely removed the case to federal court on July 13, 2023. *See* Notice of Removal [ECF No. 1].

Wal-Mart has since filed a Motion for Summary Judgment ("Def.'s MSJ") [ECF No. 20], arguing that it's entitled to judgment as a matter of law because Moreno "cannot prove that Wal-

4

Mart had actual or constructive knowledge of any dangerous condition," *id.* at 1.[4] We'll consider (and deny) that Motion here.

## THE LAW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.*

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.

---

[4] Wal-Mart argues in passing that Moreno's claim separately fails because he hasn't established the element of causation. *See* Def.'s MSJ at 4 ("Plaintiff's claim fails because he has no proof of two essential elements: notice and causation. Plaintiff . . . cannot prove that the incident caused his injuries."); *cf. Wilson–Greene v. City of Miami*, 208 So. 3d 1271, 1274 (Fla. 3d DCA 2017) (noting that, to prevail on a negligence claim, a plaintiff must establish "a causal connection between the breach [of the defendant's duty of care] and injury to plaintiff"). But Wal-Mart never explains *why* that is— nor does it elaborate on its causation argument elsewhere in the Motion. *See generally* Def.'s MSJ. It's therefore forfeited any such argument—at least for now. *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). Forfeited or not, though, the argument is frivolous: Moreno specifically testified that he was injured by the fall. *See* Moreno Dep. at 80:23–81:7 ("Q. . . . So what body parts did you injure from the incident at Wal-Mart? A. My left leg, my ankle, my lower back, and my upper back. Q. Okay. And when you say 'upper back,' are you referring to like your neck area as well? A. Yes."). We're not sure what else he needed to do to survive summary judgment.

1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also Green v. Northport*, 599 F. App'x 894, 895 (11th Cir. 2015) ("The district court could consider the record as a whole to determine the undisputed facts on summary judgment."). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

In sum, then, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

## ANALYSIS

To prevail on his negligence claim, Moreno must show "(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection

between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Wilson–Greene v. City of Miami*, 208 So. 3d 1271, 1274 (Fla. 3d DCA 2017). By statute, Florida has "modified a business's duties when its invitees"—like Moreno—"are injured by 'transitory foreign substances.'" *Lago v. Costco Wholesale Corp.*, 233 So. 3d 1248, 1250 (Fla. 3d DCA 2017) (quoting FLA. STAT. § 768.0755); *see also Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315, 317 (Fla. 2001) (defining "transitory foreign substance" as "any liquid or solid substance, item or object located where it does not belong"). To establish that Wal-Mart owed him a duty of care, then, Moreno "must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." FLA. STAT. § 768.0755(1). Moreno proceeds only on a theory of constructive knowledge—*viz.*, that Wal-Mart "should have known" of the dangerous condition. Plaintiff's MSJ Response ("Pl.'s MSJ Resp.") [ECF No. 29] at 7 ("Plaintiff[ ] has clearly shown a jury could reasonably find that Wal-Mart should have known of the water on the floor prior to the subject incident."); *see also Knoll v. Paradise Beach Homes, Inc.*, 789 F. App'x 809, 813 (11th Cir. 2019) ("Florida premises-liability law does not distinguish between actual and constructive notice in imposing a duty to invitees." (quoting *Friedrich v. Fetterman & Assocs., P.A.*, 137 So. 3d 362, 365 (Fla. 2013))).

Since it's "rare . . . that there will be direct evidence of how long a substance was on the ground," *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1169 (11th Cir. 2023), a plaintiff "may prove constructive knowledge through 'circumstantial evidence,' showing *either* that 'the dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition' *or* that 'the condition occurred with regularity and was therefore foreseeable,'" *Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d 1276, 1283 (S.D. Fla. 2021) (Altman, J.) (cleaned up) (quoting FLA. STAT. § 768.0755(1)). The dangerous condition needn't have persisted for very long to impute constructive notice on the defendant. *See, e.g.*, *Lebron v.*

7

*Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 922 (11th Cir. 2020) (reversing a directed verdict on the issue of constructive notice where the "unsafe condition existed for at least ten minutes"); *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 798 (11th Cir. 2019) (reversing summary judgment and finding that "eighteen minutes was a sufficient period to present a genuine issue of material fact" on the question of constructive notice).

Courts look to several factors to assess how long the substance has been on the floor, including "evidence of footprints, prior track marks, changes in consistency, drying of the liquid," *Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1012 (11th Cir. 2019), and whether the "offending liquid" was "dirty" or "scuffed," *Norman v. DCI Biologicals Dunedin, LLC*, 301 So. 3d 425, 429 (Fla. 2d DCA 2020). Courts are also more likely to find that a business had constructive notice when the business's employees were "in the vicinity of where the fall occurred." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 203 (11th Cir. 2019) (quoting *Markowitz v. Helen Homes of Kendall Corp.*, 826 So. 2d 256, 261 (Fla. 2002)). That makes sense, since, "with employees in the area, a jury can reasonably infer (at least where the condition is visible) that those employees *should have seen* the dangerous condition." *Torres*, 555 F. Supp. 3d at 1283–84.

Drawing all reasonable inferences in Moreno's favor, *see Pennington*, 261 F.3d at 1265 (at summary judgment, we must "review the facts and all reasonable inferences in the light most favorable to the non-moving party"), we think a reasonable jury *could* find that Wal-Mart had constructive notice of the puddle Moreno slipped on. Specifically, "when considered in a light most favorable to the non-moving party," Moreno's and Torres's accounts of the condition of the puddle—coupled with the Wal-Mart surveillance videos—"create a genuine dispute over the length of time" the liquid was on the floor before Moreno fell. *Sutton*, 64 F.4th at 1170.

8

I. **Testimony on the Condition of the Puddle**

We'll start with the parties' evidence about the puddle's condition. "Time and again, Florida's appellate 'courts have found constructive notice' when 'the offending liquid was dirty, scuffed, or had grocery-cart track marks running through it,' or if there was 'other evidence such as footprints, prior track marks, changes in consistency, or drying of the liquid.'" *Ibid.* (cleaned up) (quoting *Norman*, 301 So. 3d at 429–30); *see also ibid.* (collecting cases). Both Moreno and Torres offer ample deposition testimony on this point.

Moreno, for instance, testified that the "water looked dirty" and that it had visible "steps" and "lines from carts" in it. Moreno Dep. at 66:13–15. Torres likewise observed multiple footprints in the liquid, *see* Torres Dep. at 13:13–16 ("Q. And do you know whether the footprints were because of -- the streaks were because of Mr. Moreno? A. No. They [sic] were more footprints there."), and streaks from "the mark of the tires of the cart," *id.* at 66:8–11. And, while Moreno cannot *prove* that the water was in this condition before he slipped, *see* Moreno Dep. at 66:16–18 ("Q. How do you know those footsteps were not from you when the incident occurred? A. I cannot tell."); Defendant's Reply ("Def.'s Reply") [ECF No. 34] at 2 ("Plaintiff testified in his deposition that he does not know where the water came from, who or what caused it to be on the floor, or how long it had been there." (citing Defendant's Statement of Facts ("Def.'s SOF") [ECF No. 21] ¶¶ 14–15)), he needn't do so to survive summary judgment, *see Palavicini*, 787 F. App'x at 1010 (summary judgment must be denied if "the record evidence establishes a genuine issue of material fact regarding whether [the defendant] had actual or constructive notice of the dangerous condition"); *see also Sutton*, 64 F.4th at 1172 ("Florida law does not demand direct evidence about who or what caused the dangerous substance and when exactly it happened."). So, while a reasonable jury *could* find that the puddle was scuffed only because Moreno stepped in it, "an equally compelling inference from the dirty appearance of the [puddle] is that it had gone undetected on the floor for a

sufficient period of time to place Wal-Mart on constructive notice." *Sutton*, 64 F.4th at 1171 (quoting *Colon v. Outback Steakhouse of Fla., Inc.*, 721 So. 2d 769, 771 (Fla. 3d DCA 1998)). Because "the drawing of legitimate inferences from the facts are jury functions, not those of a judge," *Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (cleaned up)), summary judgment is inappropriate here.

Wal-Mart responds that this evidence is nonetheless insufficient to defeat summary judgment—both as a matter of law and as a matter of fact. We disagree with both arguments.

On the evidence's *legal* sufficiency, Wal-Mart insists that "testimony that a substance was . . . 'dirty' . . . is insufficient to create a jury issue *without other facts* from which a jury could reasonably conclude that the substance was on the floor for such a length of time as to become discolored *without assuming other facts*." Def.'s MSJ at 6 (emphases added) (first quoting *Encarnacion v. Lifemark Hosps. of Fla*, 211 So. 3d 275, 278 (Fla. 3d DCA 2017); and then citing *Donnelly v. Wal-Mart Stores E., LP*, 844 F. App'x 164, 168–69 (11th Cir. 2021)). That's wrong for two reasons.

*One*, Wal-Mart misstates the plaintiff's burden at summary judgment. Because "the mere presence of water on the floor is not enough to establish constructive notice," Florida law requires the plaintiff to present "additional facts . . . that would support [an inference of] constructive notice." *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011) (first citing *Broz v. Winn–Dixie Stores, Inc.*, 546 So. 2d 83, 83 (Fla. 3d DCA 1989); and then citing *Winn Dixie Stores, Inc. v. White*, 675 So. 2d 702, 703 (Fla. 4th DCA 1996)). A plaintiff, therefore, must adduce some fact other than "the mere *presence*" of the liquid, *ibid.* (emphasis added)—not (as Wal-Mart claims) some fact other than the *condition* of the liquid. Moreno's and Torres's recollections that the puddle featured footprints and cart marks, *see, e.g.*, Moreno Dep. at 66:13–15 ("You could see steps and lines from carts stepping over this liquid, and people's steps as well."); Torres Dep. at 13:20–21 ("[W]e were able to notice that there were footprints and cart tires."), are thus the "other facts" they needed to

survive summary judgment, *see, e.g.*, *Snider-Hancox v. NCL Bah. Ltd.*, 2018 WL 6308683, at *6 (S.D. Fla. Sept. 26, 2018) (Martinez, J.) (denying summary judgment where there was "a footprint in the liquid as well as dirt and grime in the puddle prior to the fall"). Indeed, as we recently recognized in an almost identical case, *see Herrera v. Walmart, Inc.*, 2024 WL 1285157, at *4–5 (S.D. Fla. Mar. 25, 2024) (Altman, J.), the Eleventh Circuit has "explicitly" rejected the argument "that a plaintiff needs something more than a track mark or footprints to reach a jury" as an inaccurate interpretation of Florida law, *id.* at *4 (quoting *Sutton*, 64 F.4th at 1171 n.2 (collecting cases)). We'll do the same here.

*Two*, in saying that the Plaintiff's evidence must establish that the "substance was on the floor for [a sufficient] length of time . . . *without assuming other facts*," Def.'s MSJ at 6 (emphasis added), Wal-Mart confuses the federal- and state-law standards of review at summary judgment. Florida courts (it's true) don't permit a plaintiff to "stack inferences" in his effort to show that the defendant "had constructive notice of a dangerous condition." *Wilson-Greene*, 208 So. 3d at 1271; *see also Cohen v. Arvin*, 878 So. 2d 403, 405 (Fla. 4th DCA 2004) ("[I]f a party to a civil action depends upon the inferences to be drawn from circumstantial evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences." (cleaned up)). But this rule has no application in federal court. *See Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 931–32 (11th Cir. 2018) ("Although Florida law provides the substantive rule of decision in this diversity case, we must decide the propriety of summary judgment in accordance with the federal standards fixed in Rule 56 of the Federal Rules of Civil Procedure[,] . . . [which] do not apply state-law rules against 'pyramiding' or 'stacking' inferences." (cleaned up)).

Under federal law, so long as an inference is "one that [a] 'reasonable and fair-minded [jury] in the exercise of impartial judgment' might draw from the evidence," it may serve as the basis for

*other* reasonable inferences. *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997)). And (as we've said) a reasonably jury *could* infer from Moreno's and Torres's testimonies that Wal-Mart had constructive notice of the dangerous condition on the floor. *See Sutton*, 64 F.4th at 1171 n.2 (citing *Woods v. Winn Dixie Stores, Inc.*, 621 So. 2d 710, 711 (Fla. 3d DCA 1993) ("Tracks in a substance generate a sufficient inference of constructive notice." (cleaned up))). So, when reviewed under the proper standard, *see, e.g.*, *Bernard Schoninger Shopping Ctrs., Ltd. v. J.P.S. Elastomerics, Corp.*, 102 F.3d 1173, 1177 (11th Cir. 1997) ("[F]ederal law determines whether the evidence . . . suffices to entitle [a party] to summary judgment."), Moreno's evidence is legally sufficient to defeat summary judgment.

As we've hinted, Wal-Mart also tries to attack the *factual* veracity of Moreno's evidence. Wal-Mart directs us to three "photographs [of the substance] that Plaintiff's husband took 'immediately' after the incident." Def.'s Reply at 2 (quoting Torres Dep. at 18:9); *see also* Post-Incident Photographs [ECF No. 22-3] at 2–4. These photographs, Wal-Mart claims, "belie [Moreno's and Torres's] testimony as the pictures show the water was not dirty, there were no footprints or cart tracks, and the only track was from Plaintiff's own fall." Def.'s Reply at 2; *see also* MTD at 8 ("Plaintiff's photographs show trace amounts of liquid, which were clear and did not contain any dirt. . . . And while there is one streak in the liquid on the floor, it is in the direction of Plaintiff's own fall as he walked into the aisle." (citing Post-Incident Photographs)). Again, we disagree.

Although, in reviewing a motion for summary judgment, we must "view the evidence in the light most favorable to the nonmoving party—meaning we accept the nonmoving party's version of events if the parties disagree about what happened," *Brooks v. Miller*, 78 F.4th 1267, 1271 (11th Cir. 2023)—"[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the

12

facts for the purposes of ruling on a motion for summary judgment," *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Brooks*, 78 F.4th at 1271 ("[W]hen a video proves that the plaintiff can't be telling the truth, we don't accept the facts as he alleges them, even for purposes of deciding a summary-judgment motion."). That said, if conflicting evidence "renders a party's story *merely unlikely* yet does not necessarily contradict it, the default rule kicks in: we must accept the party's version for purposes of considering the motion for summary judgment." *Brooks*, 78 F.4th at 1278 (emphasis added). We don't think Torres's photographs of the puddle "*completely* and *clearly* contradict[ ] [Moreno's] testimony," *ibid.* (citing *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (emphases added)), that the puddle was "very dirty" or distorted by "steps and lines from carts," Moreno Dep. at 66:14. We'll take each assertion in turn.

Contra Moreno's description of the puddle as "very dirty," *ibid.*, Wal-Mart says the photographs "show trace amounts of liquid, which were clear and did not contain any dirt," Def.'s MSJ at 8 (citing Post-Incident Photographs). Wal-Mart bolsters this view by pointing to Moreno's inability "to identify any dirt marks in the photographs" during his deposition. *Ibid.* (first citing Post-Incident Photographs; and then citing Def.'s SOF ¶ 12 ("When shown the photographs his husband took, Plaintiff was also unable to point out any dirt marks claiming that the dirt marks were dry.")). Wal-Mart also seeks to undercut Moreno's proffered explanation for the lack of dirt—that the dirty puddles had already dried out when the photographs were taken, *see, e.g.*, Moreno Dep. at 75:18–19 ("They were already drying out. There they were dryer."); Torres Dep. at 18:7–12 ("[T]he water start[ed] drying out on its own.")—by highlighting that neither Moreno nor Torres was "able to point to any dried up dirt either," Def.'s Reply at 3 (citing Def.'s SOF ¶ 12).

But the photographs themselves don't tell us much either way. Because the floor underneath the puddle is "[p]olished [gray] concrete," Moreno Dep. at 63:2–8; *see also* Post-Incident Photographs at 2–4, it's difficult to make out whether the puddle takes on its gray shade because of dirt or

13

because of the underlying surface (or both). So, while Moreno's inability to identify dirt in the photographs "may well be fertile ground for cross-examination," *U.S. Structural Plywood Integrity Coal. v. PFS Corp.*, 2022 WL 953150, at *36 (S.D. Fla. Mar. 30, 2022) (Altman, J.), a reasonable juror could nonetheless find that the liquid was discolored because it was "dirty"—just as it might accept Moreno's explanation that the soiled spots were "already drying out" by the time the photographs were taken, Moreno Dep. at 75:13–23; *see also Inskeep v. Baccus Global, LLC*, 2024 WL 416357, at *13 (S.D. Fla. Feb. 5, 2024) (Altman, J.) ("Whether—and to what extent—that statement outweighs all the evidence [the defendant] has adduced for its . . . claim is (fortunately) a question for the jury." (citing *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012))). And, since these photographs don't "depict 'all of . . . the necessary context,'" *Brooks*, 78 F.4th at 1278 (quoting *Blaylock v. City of Phila.*, 504 F.3d 405, 414 (3d Cir. 2007))—*viz.*, what the puddle looked like *before* the fall—we cannot say that they "'so utterly discredit[ ]' the [Plaintiff's] story 'that no reasonable jury could have believed' that party," *ibid.* (quoting *Scott*, 550 U.S. at 380).

Plus, even putting aside Moreno's testimony that the puddle was "dirty," Wal-Mart would still need to "completely and clearly," *Brooks*, 78 F.4th at 1278, disprove that the puddle contained "steps and lines from carts," Moreno Dep. at 66:14. We don't think it has. As the third photograph makes plain, *see* Post-Incident Photographs at 4, the puddle breaks into a narrow streak that extends from a more-concentrated pool in the center of the photograph, *see* JSOUF ¶ 11 ("The substance Plaintiff slipped on consisted of a few small puddles; however, Plaintiff could not identify a streak that was caused by his own fall." (first citing Moreno Dep. at 66:16–18, 75:24–76:3; and then citing Post-Incident Photographs)). In Wal-Mart's view, "this streak in the liquid on the floor" had to come from Moreno himself, as "it is in the direction of Plaintiff's own fall as he walked into the aisle." Def.'s MSJ at 8 (citing Post-Incident Photographs). That may be. But it's *also* reasonable to believe (as the Plaintiff does) that this streak represents "the mark of the tires of [a] cart" that had passed

14

through the liquid before the fall. Torres Dep. at 13:11; *see also* Moreno Dep. at 63:19–21 ("[I]t had lines that the carts leave[ ] . . . when they are passing by."); *cf.* Moreno Dep. at 61:22–62:4 ("Q. Were you pushing a cart or carrying anything? . . . A. My purse, because all the items were already at the cashier up front."). Similarly, the two more-concentrated pools immediately above the streak, *see* Post-Incident Photographs at 1, could be Moreno's footprints, *see* Moreno Dep. at 66:16–18 ("Q. How do you know those footsteps were not from you when the incident occurred? A. I cannot tell."), *another* shopper's footprints, *see* Torres Dep. at 13:13–15 ("Q. And do you know whether the footprints were because of -- the streaks were because of Mr. Moreno? A. No. They [sic] were more footprints there."), or something else entirely, *see* Def.'s Reply at 2 ("[T]here were no footprints[.]"). As we've said many times, whether these photos represent one thing or the other will be for the jury to decide at trial. *See Strickland*, 692 F.3d at 1154 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." (cleaned up)).

## II. Surveillance Footage

The surveillance videos of the aisle before (and during) Moreno's fall likewise create a genuine dispute of material fact as to whether Wal-Mart had constructive notice of the dangerous condition. *See Tallahassee Med. Ctr., Inc. v. Kemp*, 324 So. 3d 14, 16 (Fla. 1st DCA 2021) (per curiam) ("[A Plaintiff] may use circumstantial evidence—like the video evidence here—to prove her case."). The Incident Surveillance Video shows Moreno and Torres meeting up in the bottom-left corner of the screen before turning to walk up the aisle. *See* Incident Surveillance Video at 00:04:45–00:04:58; *see also* JSOUF ¶ 4 ("Plaintiff walked on the left side while his husband walked slightly in front of him on his right side." (cleaned up)). As Moreno approaches the aisle, we see him "slip backwards and fall to the ground on his right hip." JSOUF ¶ 5 (first citing Moreno Dep. at 70:5–22; and then citing Incident Surveillance Video at 00:04:55–00:05:05).

15

Although the parties don't dispute that Moreno's "foot made contact with the substance causing him to slip," *ibid.*, the Incident Surveillance Video doesn't show the substance clearly, *see* Incident Surveillance Video at 00:00:00–00:05:05. Nor do we see the substance on the ground in the Pre-Incident Surveillance Video, which captures the aisle over the preceding fifty-seven minutes. *See* Pre-Incident Surveillance Video at 00:00:00–00:57:46. In Wal-Mart's view, the lack of "footage of any water being spilled on the floor," Def.'s Reply at 4 (citing Pl.'s MSJ Resp. at 1), coupled with Moreno's ignorance of "where the water came from . . . or how long it had been there," *id.* at 2 (citing Def.'s SOF ¶¶ 14–15), forecloses Moreno's constructive-notice argument—especially since Moreno "has no evidence that the substance was on the floor during the entire surveillance video," *id.* at 4. Here, again, Wal-Mart is just frivolously wrong as a matter of law. *See Sutton*, 64 F.4th at 1172 ("Florida law does not demand direct evidence about . . . when exactly it happened. Instead, *circumstantial evidence* that sufficiently establishes the dangerous condition was present for a long enough period of time is enough[.]" (emphasis added)); *see also, e.g.*, Torres Dep. at 13:9–21 ("[Y]ou could see the steps on the -- the stain of the step on the water, plus . . . the mark of the tires of the cart. . . . [W]hen the fall occurred, we were able to notice that there were footprints and cart tires."). More fundamentally, though, Wal-Mart's reliance on the Pre-Incident Surveillance Video only underscores our view that summary judgment is inappropriate here. It is, after all, *because* "the video does not show the alleged condition, how it got on the floor, or when [that a] reasonable jury could infer from the absence of a clear moment when the [liquid] fell to the floor in the video that the [liquid] had been on the floor for more than one hour—far exceeding the time required for constructive knowledge." *Sutton*, 64 F.4th at 1172 (cleaned up) (citing *Winn Dixie Stores, Inc. v. Williams*, 264 So. 2d 862, 864 (Fla. 3d DCA 1972)).

But there's more. The Pre-Incident Surveillance Video shows "Wal-Mart employees walk[ing] by the area where plaintiff fell sixty-five times," and (according to Moreno) "[n]one ever

16

looked down at the floor or turned their head towards the area where the incident would occur." Pl.'s Resp. SOF ¶ 30 (citing Pre-Incident Surveillance Video). Wal-Mart once again suggests that Moreno offers no evidence "as to the inspections performed or . . . that the substance was on the floor when a Wal-Mart employee walked by the area where the incident would occur prior to the incident." Defendant's Reply Statement of Facts ("Def.'s Reply SOF") [ECF No. 35] ¶ 30 (first citing Incident Surveillance Video; and then citing Pl.'s MSJ Resp.). In saying so, however, Wal-Mart ignores reality: "[T]he account offered by [Moreno] and the video itself" *are* evidence of the Plaintiff's interpretation, *Sutton*, 64 F.4th at 1172—an interpretation Wal-Mart never refutes (for example, with testimony from these employees that they *did* inspect the area), *see, e.g.*, *ibid.* ("Wal-Mart insists that the affidavits of [two employees] establish not only that they walked by a total of three times over the course of an hour (and one time ten minutes) before the fall, but that they never saw a grape.").[5]

Instead, Wal-Mart says that, "[j]ust prior to the incident, multiple people walked through the aisle or near the liquid apparently without issue." *Id.* ¶ 20 (citing Incident Surveillance Video at 00:00:45–00:01:48, 00:03:50–00:04:02). But that's not evidence of anything. *See, e.g.*, *Sutton*, 64 F.4th at 1172 ("While [a] Wal-Mart employee . . . inspected the area shortly before the fall and did not see

---

[5] Wal-Mart criticizes the Plaintiff for failing to prove that Wal-Mart's employees didn't inspect the floor properly. *See* Def.'s Reply SOF ¶ 30 ("[T]he video footage speaks for itself. *Plaintiff* has not deposed any Wal-Mart employee or obtained testimony from any Wal-Mart employee or corporate representative as to the inspections performed[.]" (emphasis added)). Here, again, Wal-Mart improperly shifts the burden that generally governs our summary-judgment practice. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) ("If the party moving for summary judgment fails to discharge [its] initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991))). Plus, elsewhere, Wal-Mart seems to *concede* that "two Wal-Mart employees walked by the area where plaintiff fell" during "the five minutes prior to the incident," and "[n]either ever looked down at the floor or turned their head towards the area where the incident would occur." Def.'s SOF ¶ 21 (citing Incident Surveillance Video at 00:00:57–00:01:37, 00:04:42–00:04:51). As it has done in so many summary-judgment motions before, Wal-Mart appears to be just wasting everyone's time.

17

the grape, Sutton rebutted this with a proffer about a track mark and footprints. When taken in a light most favorable to the non-moving party, this corpus of evidence is sufficient to create a genuine issue of material fact." (citing *Woods*, 621 So. 2d at 711)). Indeed, taking the facts in the light most favorable to Moreno, these other shoppers who "pass[ed] right over the area," Def.'s Reply at 4, may well have been the source of the "steps and lines from carts" Moreno observed in the puddle, Moreno Dep. at 66:13–15. Regardless, the parties' competing narratives (and the reasonable inferences they draw from those narratives) create a genuine dispute as to the length of time the puddle remained on the floor. And a jury "must settle the score" at trial. *Sutton*, 64 F.4th at 1172.

In its final attempt, Wal-Mart (relying on Judge Gayles's decision in *Ayers v. Wal-Mart Stores, East, L.P.*,) argues that, because "the water was clear with no markings, . . . 'there is no credible reason to believe that any employee would have or could have seen the clear substance on the floor.'" Def.'s Reply at 5 (quoting *Ayers v. Wal-Mart Stores, E., L.P.*, 2017 WL 747541, at *3 (S.D. Fla. Feb. 27, 2017) (Gayles, J.)). In *Ayers*, though, "'it was undisputed that the water was clean with no footprints, track marks, or smudges,' so there were no additional facts establishing constructive notice." *Sutton*, 64 F.4th at 1171 n.2 (quoting *Ayres*, 2017 WL 747541, at *1–3). That's just not our case. Taking the facts in the light most favorable to Moreno—as we must, *see, e.g.*, *Pennington*, 261 F.3d at 1265 (on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party")—Moreno has adduced more than enough evidence to rebut Wal-Mart's claim that the liquid had no markings, *see ante*, at 8–15.

\* \* \*

The Eleventh Circuit's opinion in *Sutton*—which is binding on all federal district courts in this Circuit, *see Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) ("[A] district court in this circuit is bound by [the Eleventh Circuit's] decisions.")—provided much-needed guidance on

18

how we should review motions for summary judgment in slip-and-fall cases. For the benefit of these and all future litigants, we'll reemphasize two key aspects of that standard.

*One*, testimony that a substance was dirty (or that it displayed footprints and tracks) "generates a sufficient inference of constructive notice." *Sutton*, 64 F.4th at 1171 n.2 (quoting *Woods*, 621 So. 2d at 711 (cleaned up)). Accordingly, prior district court cases suggesting otherwise, *see, e.g.*, *Hernandez v. Sam's E., Inc.*, 2021 WL 1647887, at *5 (S.D. Fla. Apr. 26, 2021) (Ruiz, J.); *Granela v. Wal-Mart Stores E., L.P.*, 2021 WL 768271, at *3 (S.D. Fla. Feb. 26, 2021) (Gayles, J.); *Rubiano v. Costco Wholesale Corp.*, 2016 WL 7540571, at *3 (S.D. Fla. Oct. 4, 2016) (Ungaro, J.), "do not accurately recount Florida law" and should no longer be relied on in describing a slip-and-fall plaintiff's burden at summary judgment, *Sutton*, 64 F.4th at 1171 n.2 (cleaned up).

*Two*, to survive summary judgment, a plaintiff need only create a "reasonable inference that the [substance] had been on the ground for a sufficient period of time to establish constructive notice." *Id.* at 1171. And, in federal court, *we don't care* whether that inference is based on *another* inference—so long as both inferences are reasonable. *See Daniels*, 692 F.2d at 1326 ("An inference is not unreasonable simply because it is based in part on conjecture, for an inference by definition is at least partially conjectural." (cleaned up)). Florida's rule against "'pyramiding' or 'stacking' inferences" at summary judgment thus has no bearing here. *Berbridge*, 728 F. App'x at 931. We can, in short, safely ignore the many state-court cases granting summary judgment under that rule. *See, e.g.*, *Encarnacion*, 211 So. 3d at 278; *Morales v. Ross Dress for Less, Inc.*, 306 So. 3d 335, 337 (Fla. 3d DCA 2020).

Wal-Mart's Motion advances arguments that are *directly* foreclosed by both *Sutton* rules. *See* Def.'s MSJ at 6 ("[T]estimony that a substance was 'oily,' 'dirty,' and 'dark' is insufficient to create a jury issue without other facts from which a jury could reasonably conclude that the substance was on the floor for such a length of time as to become discolored without assuming other facts." (first

19

citing *Encarnacion*, 211 So. 3d at 278; and then citing *Donnelly*, 844 F. App'x at 168–69)); Def.'s Reply at 5 ("Plaintiff . . . is also asking the court *to improperly stack inferences* to assume that the Wal-Mart employees who walked by should have noticed the tiny amount of clear liquid when there is no evidence that it existed at any of those instances." (emphasis added)). Wal-Mart's failure to "recognize binding Eleventh Circuit precedent"—precedent its own affiliate was a *party* to—"simply wastes the resources of both the parties and the Court[.]" *Seneca Specialty Ins. Co. v. 845 N., Inc.*, 2015 WL 3400415, at *2 n.3 (M.D. Fla. May 26, 2015) (Howard, J.). Moving forward, we trust that all slip-and-fall litigants will carefully engage with *Sutton* (and other binding cases from our Circuit) before filing their motions and certifying that their "legal contentions are warranted by existing law[.]" FED. R. CIV. P. 11(b)(2).

* * *

Accordingly, we hereby **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion for Summary Judgment [ECF No. 20] is **DENIED**.
2. The parties shall submit their motions *in limine* by **April 29, 2024**.

**DONE AND ORDERED** in the Southern District of Florida on April 4, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record